UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

NAUTILUS INSURANCE COMPANY,
7233 E Butherus Drive
Scottsdale, AZ 85260

    Plaintiff,

v.

GENEVA ENTERPRISES, INC.,

Serve: Registered Agent
    J H Griffin
    1902 Association Drive
    Reston, VA 20191

CARS-DB1, LLC, and

Serve: Registered Agent
    Corporation Service Company
    Bank of America Center, 16th Floor
    1111 East Main Street
    Richmond, VA 23219

WALKER TITLE, LLC,

Serve: Registered Agent
    Alan L Walker
    11781 Lee Jackson Highway
    Suite 300
    Fairfax, VA 22033

    Defendants.



CASE NO.: 1:14CV37
GBL/JFA

## COMPLAINT

Plaintiff, NAUTILUS INSURANCE COMPANY (hereafter "Nautilus"), by and through its undersigned counsel, Bonner Kiernan Trebach & Crociata, LLP, hereby files its Complaint against GENEVA ENTERPRISES, INC. ("Geneva"); CARS-DB1, LLC ("CARS"); and WALKER TITLE, LLC ("Walker Title"). The grounds for this Complaint are set forth below.

## I. JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the amount in controversy is greater than $75,000, exclusive of interest and costs, and there is diversity of citizenship between the parties.

2. Venue is proper under 28 U.S.C. § 1391, as a substantial part of the events, acts and omissions giving rise to this action occurred within this district.

## II. THE PARTIES

3. Nautilus is a stock insurance company incorporated in the State of Arizona, with its principal place of business in Scottsdale, Arizona.

4. Geneva is a corporation formed under the laws of the State of Delaware with its principal place of business in Arlington County, Virginia.

5. CARS is a limited liability company formed under the laws of the State of Delaware. Upon information and belief, no member of CARS is a citizen of Arizona.

6. Walker Title is a limited liability company formed under the laws of the Commonwealth of Virginia. Upon information and belief, no member of Walker Title is a citizen of Arizona.

7. Upon information and belief, Plaintiff Nautilus is completely diverse from each of the three Defendants.

8. Nautilus expects that CARS and Walker Title will be dismissed from this lawsuit once they interplead or otherwise deposit certain funds, described more particularly herein, into the Court's registry.

### III. FACTUAL BACKGROUND

A. **The Environmental Remediation Agreement and Payments Due Thereunder.**

9. In or about September 2011, Geneva, CARS and Penrose Property Company, LLC ("Penrose"), entered into an Environmental Remediation Agreement (hereinafter "ERA") to remediate pollution conditions on a certain real property located at the intersection of Columbia Pike and South Glebe Road in Arlington, Virginia. A true and correct copy of the ERA is attached hereto and incorporated in as Exhibit A.

10. The ERA was entered into as part of a purchase and sale transaction between CARS, the seller of the property, Penrose, the purchaser of the property, and Geneva, the tenant on the property for the past 60 years. Geneva operated an automobile dealership and repair facility on the property under the name Rosenthal Chevrolet/Jeep/Eagle.

11. Geneva leased the property under successive leases, most recently renewed November 21, 1997, and again November 14, 2007. Under the terms of those leases, Geneva is solely responsible for environmental pollution and contamination on the property, and such responsibility survives the termination of the lease.

12. The environmental pollution on the property was mostly caused by Geneva's activities and consisted mostly of petroleum by-products and chemicals in motor oils, gasoline and other solvents. The pollution was to be remediated under the ERA under the auspices of a Virginia Department of Environmental Quality ("VDEQ") Voluntary Remediation Program ("VRP").

13. Under the ERA, each of the three parties was to contribute to separate accounts maintained by Walker Title as the escrow agent. More specifically, Penrose was required to

provide the first $500,000 of the "Expense Obligation" under the ERA. Subsequently, Geneva was required to deliver to the escrow agent $250,000 in cash or in a letter of credit. Finally, CARS was required to fund its account with $500,000. The Geneva escrow account was required to be replenished in $100,000 increments, by cash deposit or increase in the letter of credit. The final payment, or increase in the letter of credit, would be in the amount of $50,000. Like Penrose and CARS, Geneva was required to initially fund the ERA in the total amount of $500,000. (Exhibit A, ¶¶ 3(b), 3(c), and 3(d).)

14. The ERA required the escrowed funds to be disbursed from the Penrose escrow first, the Geneva escrow second and the CARS escrow third. (Exhibit A, ¶ 3(e).)

15. The ERA additionally requires Geneva to be responsible for all sums over the initial $1,500,000 funding obligation. Specifically, the ERA provides: "If applicable, after fulfillment of the CARS Expense Obligation, Tenant [Geneva] shall be responsible to promptly pay for any and all additional Environmental Expenses necessary to complete the Remediation Work and obtain Site Closure and otherwise comply with Tenant's obligations under the Leases." (Exhibit A, ¶ 3(e).)

16. Penrose was required to submit invoices and draw requests on a monthly basis as the remediation work progressed. The project began in November-December 2012, and was substantially completed by around March 2013.

17. The remediation project was initially budgeted for around $500,000 based on a site characterization that was, at least in part, limited by Geneva's ongoing operations on the property at the time of the site characterization.

18. Once Penrose's contractor began the environmental remediation work under the VRP, the extent of the environmental contamination was discovered to be larger than expected.

The volume of soils impacted by petroleum products and other contaminants deposited or released into the ground as a result of Geneva's activities on the property was substantially greater that the initial, limited site characterization indicated. By December 2012, the initial budget was exceeded. The total project cost as of December 11, 2013, was $2,368,522.92.

19. Penrose paid its $500,000 into the escrow. Upon presentation of invoices, that sum was disbursed from the escrow by Walker Title to Penrose.

20. Penrose has submitted invoices for the full amount of the project to Geneva and CARS. To date, Geneva has refused to release any of its escrowed funds. In so doing, Geneva has breached the ERA.

21. CARS has expressed its consent to the disbursement of its funding obligation from escrow despite Geneva's refusal to consent to the disbursement of its funds. Geneva objects to the disbursement of the CARS funds. Walker Title has refused to disburse the CARS funds over Geneva's objection.

22. As of the date of filing, CARS owes $500,000 under the ERA.

23. As of the date of filing, Geneva owes its initial funding obligation of $500,000, plus $868,522.92 in additional Environmental Expenses necessary to complete the Remediation Work and obtain Site Closure under the ERA.

24. Geneva is further obligated to pay for all environmental expenses under the applicable leases.

**B.    The Nautilus Insurance Policy and Penrose's Assignment of Rights to Nautilus.**

25. Nautilus issued a certain policy of insurance to Penrose affording insurance coverage for, among other things, the failure of Geneva and/or CARS to perform under the ERA.

26. As a condition for invoking the policy's provisions for indemnifying Penrose for the failure of Geneva and/or CARS to perform under the ERA, Penrose is required to assign all its rights under the ERA and the applicable leases against the non-performing party(ies).

27. On or about August 28, 2013, Penrose executed an Assignment of Rights in favor of Nautilus in consideration of an indemnity payment in the amount of $400,000. A true and correct copy of the First Assignment of Rights is attached hereto as Exhibit B.

28. On or about December 12, 2013, Penrose executed a second Assignment of Rights in favor of Nautilus in consideration of an indemnity payment in the amount of $1,168,522.92. A true and correct copy of the Second Assignment of Rights is attached hereto as Exhibit C.

29. By virtue of the First and Second Assignment of Rights, Nautilus stands in the shoes of Penrose and has acquired all of Penrose's rights to enforce the ERA and the leases against the parties to those contracts.

## COUNT I:
## BREACH OF CONTRACT AGAINST GENEVA

30. Nautilus incorporates and re-alleges the allegations in Paragraphs 1-29 above as if fully set forth herein.

31. Geneva is obligated by the ERA to pay $500,000 plus the difference between the total cost of the environmental remediation project and the $1,500,000 funded under the ERA. Accordingly, Geneva owes $1,368,522,92 under the ERA.

32. Geneva has failed and refused to pay such sums properly due and owing and is, accordingly, in breach of the ERA.

33. Moreover, Geneva is responsible for all environmental remediation costs under the applicable lease that it entered into with CARS, which lease(s) were assigned to Penrose as part of the purchase of the property.

34. Penrose, assignor to Nautilus, has fulfilled all material conditions precedent to performance by Geneva.

35. Geneva therefore owes Nautilus $1,368,522.92 in environmental remediation expenses under the ERA.

36. As a result of Geneva's failure to pay monies it owes under the ERA, Nautilus as assignee of Penrose, has been damaged in the amount of $1,368,522.92 plus additional expenses as a result of Geneva's refusal to pay and refusal to consent to release of the CARS funding obligation from escrow.

37. The ERA additionally entitles the prevailing party to recover costs and disbursements, including attorney's fees, incurred as a result of litigation to enforce the ERA.

## COUNT II:
## BREACH OF CONTRACT AGAINST CARS

38. Nautilus incorporates and re-alleges the allegations in Paragraphs 1-37 above as if fully set forth herein.

39. CARS is obligated to pay Nautilus, as assignee of Penrose, $500,000, representing its funding obligation under the ERA. CARS has not tendered such payment as of the date of filing this Complaint.

40. CARS previously consented to the release of its $500,000 funding obligation from escrow to Penrose. Geneva has, however, objected to the release of those funds to Penrose.

41. Despite the consent of CARS, its agent Walker Title has refused to release the CARS escrow to Penrose, placing CARS in breach of the ERA.

42. Nautilus asserts that CARS's liability under the ERA is limited to its $500,000 funding obligation and that CARS would discharge its obligation under the ERA by interpleading its $500,000 and/or depositing its $500,000 into the registry of this Court.

## COUNT III:
## BREACH OF CONTRACT AGAINST WALKER TITLE

43. Nautilus incorporates and re-alleges the allegations in Paragraphs 1-42 above as if fully set forth herein.

44. Penrose presented Walker Title with invoices and draw requests exceeding the total available funding under the ERA.

45. Walker Title is obligated to disburse the funds held in escrow under the ERA and the related Escrow Agreement

46. Walker Title has refused to disburse the funds it is holding in escrow because of Geneva's groundless objection.

47. CARS has previously consented to the release of its $500,000 funding obligation from escrow to Penrose. Walker Title, the escrow agent, has refused to disburse such funds over the objection of Geneva. Walker Title has therefore breached the Escrow Agreement.

48. Nautilus asserts that Walker Title has no stake in the outcome of this litigation and that it would discharge its obligations by interpleading all monies held by Walker Title pursuant to the ERA and depositing such sums into the registry of this Court.

WHEREFORE, Nautilus respectfully requests that judgment be entered in its favor as follows:

a. Awarding Nautilus $1,368,522.92 against Geneva plus such other damages as may be established at trial;

b. Awarding Nautilus $500,000 against CARS and/or Walker Title;

  c.  Awarding Nautilus its attorney's fees and costs in this litigation;

  e.  Awarding pre-judgment interest from the date of the breach;

  f.  In the alternative, if CARS and/or Walker Title interplead the CARS $500,000 funding obligation, disbursing all sums held in escrow and/or in the Court's registry to Nautilus, they will discharge their obligations pursuant to the ERA;

DATED this 14th day of January, 2014.

        Respectfully submitted,

        BONNER KIERNAN TREBACH & CROCIATA, LLP

        _____
        Heather S. Deane, VSB 41895
        Michael L. Pivor, VSB 75312
        1233 20th Street, NW
        8th Floor
        Washington, DC  20036
        Tel.: 202-712-7000
        Fax: 202-712-7100
        Email: hdeane@bonnerkiernan.com

        *Counsel for Plaintiff*
        *Nautilus Insurance Company*

**Of Counsel:**

William H. White Jr.
DC Bar No.: 461341
1233 20th Street, NW
8th Floor
Washington, DC 20036
Tel.: 202-712-7000
Fax: 202-712-7100
Email: wwhite@bonnerkiernan.com
(*Pro Hac Vice* Petition to be filed)